UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| JOHN BUCCIERI,<br>         Plaintiff, | )<br>)<br>) | |
| | ) | |
| v. | ) | Civ. No. 4:22-cv-40132-MRG |
| | ) | |
| | ) | |
| VITAL EMERGENCY MEDICAL<br>SERVICES, | )<br>) | |
|          Defendant. | ) | |

**ORDER ON MOTION FOR DEFAULT JUDGMENT [ECF No. 16]**

**GUZMAN, J.**

Plaintiff John Buccieri brings suit against Defendant Vital Emergency Medical Services ("Vital") for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1211 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and Mass. Gen. Laws ch. 151B ("Chapter 151B") alleging Vital failed to hire him for a "non-emergency position" because he is deaf. Plaintiff filed his complaint on November 14, 2022. [Compl., ECF No. 1]. Defendant failed to answer or otherwise respond, despite being served on December 29, 2022. [See ECF No. 7]. Before the Court is Plaintiff's motion for default judgment, [ECF No. 16]. For the reasons stated below, the motion is **GRANTED IN PART**.

I.      **BACKGROUND**

        A. **Relevant Facts**

                a. **Allegations in the Complaint**

The Court begins by stating the relevant facts, as alleged by the complaint. Mr. Buccieri is a deaf individual and asserts he is a "seasoned EMT/firefighter." [Compl. ¶ 9]. On or around November 15, 2018, Mr. Buccieri applied for a "non-emergency position" with Defendant, an

ambulance services company. [Id. ¶ 10]. Plaintiff does not name the exact position or describe any of its job duties, but asserts that he "is and has been capable of performing the essential functions of the position with reasonable accommodations as necessary." [Id. ¶ 19]. The Complaint alleges that on or about January 10, 2019, Mr. Buccieri interviewed for the position and was initially offered a position. [Id. ¶ 11]. When Mr. Buccieri attempted to accept the position, however, he was told it was no longer available. Defendant further told Mr. Buccieri to reapply if the position opened up in the future. [Id. ¶ 12]. In his memorandum in support of his motion for a default judgment, Plaintiff added that Defendant "refused to allow Plaintiff to accept the position because he took too long to accept it," a justification that Plaintiff asserts was pretextual. [ECF No. 16-1 at 1]. Through his recruiter, Mr. Buccieri followed up with a call to Defendant on March 11, 2019, but was told there were no openings at the time. [Compl. ¶ 13]. When the position was reposted, Mr. Buccieri applied on February 25 and May 2, 2019. [Id. ¶ 14]. Despite multiple emails and phone calls, these applications and Mr. Buccieri's messages went ignored. [Id. ¶ 15]. Plaintiff asserts that "at every step of the hiring process, [he] complied with the directions and requirements of Defendant." [Id. ¶ 16]. Plaintiff alleges, "[u]pon information and belief, Defendant refused to hire Plaintiff on the basis of his disability." [Id. ¶ 17]. Further, "[u]pon information and belief, Plaintiff would have been hired without Defendant's discriminatory policies, procedures, and practices." [Id. ¶ 18].

In terms of damages, Plaintiff is seeking a total of $50,000 in compensatory and/or punitive damages. [ECF No. 29 at 2]. Plaintiff asserts he is seeking $25,000 "in emotional distress damages" and $25,000 in punitive damages. [Id.] When ordered by the Court to detail his claim for damages, Plaintiff submitted an affidavit and memorandum. [ECF Nos. 27, 29]. Neither

document contains any non-conclusory factual support for damages. Plaintiff's strongest evidence

is contained in a single paragraph in his affidavit:

> Because of Vital's discrimination against me based solely on my hearing disability, I have suffered and continues to suffer from dignitary harm as well as psychological and emotional distress, including but not limited to anger, anxiety, disappointment, embarrassment, humiliation, self-doubt and loss of self-confidence, and feelings of exclusion and isolation from society. I have also suffered from loss of opportunity, including loss of work experience and trainings in the EMS field, which have contributed to my emotional distress. I have been denied similar ambulance driving positions in the past solely because of my disability, and Vital's discrimination reaffirms that a large part of society deems me unable to work simply because I am deaf.

[ECF No. 27 ¶ 13].

Plaintiff also seeks injunctive relief, [Compl. at 9–10], which is listed and discussed below

in the Injunctive Relief section, infra.

### b.  Hearing Testimony

On February 19, 2026, the Court held a hearing on Plaintiff's default judgment motion.

Defendant did not appear, and Mr. Buccieri was the only witness called. Mr. Buccieri described

his interactions with Defendant in the application process and disclosed for the first time that, prior

to Vital's rejection of his application, Vital had actually offered Mr. Buccieri a job in an in-person

meeting. [Hr'g Tr. 9:2–13; id. 14:19–23, rough transcript on file with the Court]. As this meeting

was in person, the Court may infer that Vital was aware that Mr. Buccieri was deaf. Despite being

offered a position, Mr. Buccieri rejected the offer because he wanted to work for another

ambulance company that had better benefits. [Id. 9:10–13]. Plaintiff himself noted that the Vital

employees who offered him the position "were upset" upon hearing that he was rejecting the offer.

[Id. 9:12]. Then, the other company with purportedly better benefits did not work out and did not hire Mr. Buccieri.[1] [Id. 9:13].

At this point, Mr. Buccieri went back to Vital and attempted to accept the offer he previously turned down. [Id. 9:18–10:19]. After some back and forth, Mr. Buccieri made two phone calls to Vital using a video relay interpreter. [Id. 10:1–23; id. 13:14–20]. When he inquired if the job was still open the first time, he identified himself to the recipient of the call and that person told him the job had already been filled. [Id. 10:18–19]. Mr. Buccieri alleges that he called Vital again five minutes later, but this time, he asked the interpreter to pretend like they were the job applicant and to not identify Mr. Buccieri as the true caller. [13:21–14:8]. On this second call, the person on the line stated that the position was still open. [Id. 13:25–14:1]. Mr. Buccieri stated, "that's when I figured out, yes, I'm not getting a job because I'm deaf." [Id. 14:6–7]. Later in the hearing, Mr. Buccieri claimed that some unspecified time after his rejection, a manager at Vital told him he was rejected "because [he] was deaf." [Id. 21:9–13]. Mr. Buccieri states that Vital "insulted" him with the rejection and that he felt "let down," "awful," and "discouraged." [Id. 21:23–22:6]. Plaintiff noted that he felt he was not hired as "retribution for what I did," but did not clarify if he meant retribution for rejecting the offer, or for some other action. [Id. 21:12–19].

The Court pauses to note that Mr. Buccieri filed three lawsuits against ambulance companies on the same day, each alleging failure to hire and seeking compensatory emotional distress damages and punitive damages. See Buccieri v. Lifeline Ambulance Service, Inc., No. 22-cv-40131-MRG (D. Mass.); Buccieri v. Brewster Ambulance Service, No. 22-cv-11939-MRG (D.

---

[1] Mr. Buccieri also sued the competing ambulance company, Brewster Ambulance Service, Inc. for failure to hire. Buccieri v. Brewster Ambulance Service, Inc., No. 4:22-cv-11939-MRG (D. Mass.)

Mass.).[2] In fact, Plaintiff's assertions of his emotional distress are essentially verbatim in each of the complaints. [Compare Compl. ¶ 23 with Brewster, ECF No. 1 ¶¶ 19, 38, and Lifeline, ECF No. 1 ¶¶ 17, 49].

When asked by the Court how Mr. Buccieri could establish that *this* Defendant, Vital, caused all his damages when he made nearly identical claims against three different companies, neither Mr. Buccieri nor his counsel answered the question. [Hr'g Tr. 4:20–5:21]. Counsel said Plaintiff's testimony would resolve the issue, [id.] but Mr. Buccieri never addressed the issue of causation and separating out his harm caused by Vital versus other sources.

### B.  Procedural History

Plaintiff filed his Complaint on November 14, 2022. [Compl.]. Defendant failed to answer or otherwise respond, despite being served on December 29, 2022. [See ECF No. 7]. On June 14, 2023, Plaintiff moved for entry of default against Vital for its failure to respond. [ECF No. 12]. The Court entered default, and Plaintiff subsequently moved for default judgment on June 15, 2023. [ECF No. 16]. The Court granted the motion for default judgment but withheld entering the judgment until Plaintiff made a showing as to the damages he seeks. [ECF No. 28].

Upon reviewing Plaintiff's proffer in advance of a hearing on the entry of default judgment, the Court noted deficiencies in Plaintiff's complaint and supplemental filings that brought into question whether entering a default judgment in this case is appropriate. Accordingly, Plaintiff was ordered to show cause as to his entitlement to damages as well as to respond to the Court's concerns about the substantive allegations. [Show Cause Order, ECF No. 31]. In the same Show Cause

---

[2] "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Rodi v. S. New Eng. Sch. of L., 389 F.3d 5, 19 (1st Cir. 2004) (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)). Accordingly, the Court takes judicial notice of Mr. Buccieri's other lawsuits.

Order, the Court noted that Plaintiff's claims under Counts II and III may be barred by the statute of limitations and asked Plaintiff to respond. [Id. at 7]. On January 12, 2026, Plaintiff filed a response to the show cause order, [ECF No. 33], and conceded to dismissal of Counts II and III, which were his claims pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") and Mass. Gen. Laws ch. 151B ("Chapter 151B").

A hearing on the motion for default judgment was held on February 19, 2026. [ECF No. 37]. At the hearing, Plaintiff testified directly; however, as discussed above, his testimony relayed a story that was materially different from the allegations made in his complaint.

With the factual and procedural background established, the Court next turns to the applicable legal standards.

## II.    <u>LEGAL STANDARDS</u>

### A. <u>Default Judgment</u>

"Federal Rule of Civil Procedure 55(b)(2) authorizes judgment by default where, as here, default against defendants have been entered for defendants' failure to appear, or to plead or otherwise defend." <u>Vuitton Malletier v. Forty</u>, No. CV 03-2277 (JAG), 2005 WL 8167941, at *3 (D.P.R. Sept. 8, 2005), <u>report and recommendation adopted sub nom.</u> <u>Louis Vuitton Malletier v. Lincoln Fantasy</u>, No. CV 03-2277 (JAG), 2005 WL 8167907 (D.P.R. Oct. 31, 2005). "Unless set aside for good cause, the entry of default deprives defendant of the right to contest the factual allegations of the complaint." <u>Id.</u> (citing Note at page 851, Fed. Civ. Rules Handbook, Thomson-West, 2004 Edition).

Following entry of default, the Court may enter judgment by default by accepting as true any well-pleaded factual allegations in the complaint to determine whether it alleges a cause of action. Id. (citing <u>Ramos-Falcon v. Autoridad de Energía Eléctrica,</u> 301 F.3rd 1, 2 (1st Cir. 2002);

Quirindongo Pacheco v. Rolón Morales, 953 F. 2d 15, 16 (1st Cir. 1992)). Although the facts alleged in the complaint are taken as true, "the facts must be sufficiently well pleaded to support the requested judgment; otherwise, the district court may require 'such hearings . . . as it deems necessary and proper . . . .'" Int'l Union of Operating Eng'rs, Loc. 4 v. Stanley Excavation, 243 F.R.D. 25, 27 (D. Me. 2007) (quoting Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 12 n. 8 (1st Cir.1985); Fed. R. Civ. P. 55(b)(2)). The Court may conduct a hearing to "establish the truth of any averment" in the complaint. Ramos-Falcon, 301 F.3d. at 3. However, in the First Circuit such hearing "is appropriate only if the Court has made 'its requirements known in advance to the plaintiff, so that [he] could understand the direction of the proceeding and marshal such evidence as may be available to [him].'" Vuitton Malletier, 2005 WL 8167941, at *3 (quoting Ramos-Falcon, 301 F.3d. at 3). "Although an entry of default establishes liability, it does not establish the amount of damages owed to the plaintiff for purposes of a default judgment." Groden v. Epstein, No. 24-cv-10303-ADB, 2024 U.S. Dist. LEXIS 188955, at *7 (D. Mass. Oct. 17, 2024). Further, although allegations in the complaint are taken as true, the Court "need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages," and the Court "is required to conduct its own inquiry to ascertain the amount of damages with reasonable certainty." Bonnette v. Jmac Distribution, LLC, No. 20-30046-MGM, 2021 U.S. Dist. LEXIS 257689, at *3 (D. Mass. Aug. 3, 2021) (citations omitted).

### B. Damages under Title I of the ADA

Title I of the ADA prohibits discrimination against a qualified individual because of his or her impairment with regard to certain employment practices, including the one at issue here: failure to hire. See 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, the plaintiff must prove that he: (1) is disabled; (2) is a qualified individual; and (3) was

discriminated against by the employer because of the disability. See Connolly v. Dep't of Conservation & Recreation, 768 F. Supp. 3d 214, 220 (D. Mass. 2025); 42 U.S.C. § 12112(a).

The remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, are available to those claiming employment discrimination under the ADA. 42 U.S.C. § 12117(a). Additionally, the Civil Rights Act of 1991 allows plaintiffs to claim compensatory and punitive damages for discrimination under Title I of the ADA, just as they can for violations of Title VII of the Civil Rights Act. 42 U.S.C. § 1981a(a)(2) & (b); DeRosa v. Nat'l Envelope Corp., No. 06 CIV. 3425 (BMC), 2011 WL 13281769, at *3 (E.D.N.Y. Jan. 20, 2011) (quoting Sharp v. Abate, 887 F. Supp. 695, 699 (S.D.N.Y. 1995)). To be eligible for compensatory damages under the ADA, a plaintiff must first show intentional discrimination by the defendant. McDonough v. City of Quincy, 452 F.3d 8, 23 (1st Cir. 2006) (citing Kolstad v. American Dental Ass'n, 527 U.S. 526, 534 (1999)). Plaintiffs face a higher burden for recovering punitive damages. "Punitive damages are limited . . . to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Kolstad, 527 U.S. at 529–30 (quoting Rev. Stat. § 1977, as amended, 42 U.S.C. § 1981a(b)(1)).

## III.    DISCUSSION

### A. Sufficiency of the Allegations

The Court's earlier Show Cause Order detailed the Court's concerns with the sufficiency of Plaintiff's allegations, and Plaintiff's testimony at the evidentiary hearing on default judgment did little to reassure the Court of the strength of Plaintiff's claims. [See Show Cause Order]. Prior to the hearing, the Court indicated that "Plaintiff's assertion that Defendant failed to hire him because of discrimination is conclusory and speculative." [Id. at 5]. Further, the Court noted that

Mr. Buccieri had not alleged any specific discriminatory policy of the Defendant other than the singular failure to hire. [Id. at 6]. Many of Plaintiff's key allegations were made pursuant to "information and belief." [See Compl. ¶¶ 17–18]. Pleading "upon information and belief" is authorized by the Federal Rules of Civil Procedure Rule 11(b); however, in reviewing such allegations, the Court should disregard the fact if it is conclusory and "otherwise credi[t] [it] as true for the purpose of this decision." In re LaMantia, No. 18-10632, 2019 WL 5388056, at *5 n.2 (Bankr. D. Me. Oct. 18, 2019) (citation omitted). The Court was hoping that the evidentiary hearing on the default judgment motion would provide clarity and support for Plaintiff's claims; however, Plaintiff's hearing testimony merely muddied the waters with inconsistent statements and new allegations that did not appear in any other prior pleading.

Despite the inconsistent testimony, failure to include material facts in the Complaint, and the Complaint's vague and conclusory statements, the Court is mindful that on a default judgment, the Court generally must take all well-pleaded allegations as true. Ramos-Falcon, 301 F.3rd at 2 (citing Quirindongo Pacheco, 953 F. 2d at 16). However, as noted, although allegations in the complaint are taken as true, the Court, "need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages," and the Court "is required to conduct its own inquiry to ascertain the amount of damages with reasonable certainty." Bonnette, 2021 U.S. Dist. LEXIS 257689, at *3 (citations omitted). Here, certain facts are material to determine a damages amount. For example, the Defendant's conduct and interactions with Plaintiff is critical to establishing intentional discrimination for compensatory damages and malice or reckless indifference for punitive damages. See Kolstad, 527 U.S. at 529–30, 534, 536. Mr. Buccieri originally based his discrimination claim on the failure to hire him the first time he applied. [See Compl.]. In his show cause response, he asked this Court to infer, based on timing, that the

9

Defendant intentionally discriminated against Plaintiff. [ECF No. 33 at 3 ("Drawing all reasonable inferences in Plaintiff's favor, as the Court must on default, this sequence supports the inference that Defendant extended an offer, learned Mr. Buccieri was deaf, and manufactured a pretextual reason to withdraw it.")]. The problem here is that Mr. Buccieri's testimony– admitting that Vital knew he was deaf when they originally offered him the job– undercuts his timing argument that the company rescinded his offer after it "learned Mr. Buccieri was deaf." This is just one inconsistent or confusing fact in a record full of contradictions.

Despite the Court's reservations, upon entry of default, the Defendant has waived its right to contest the factual allegations of the Complaint, and the Court finds that Plaintiff has met his prima facie burden on his ADA claim. See Vuitton Malletier, 2005 WL 8167941, at *3 ("Unless set aside for good cause, the entry of default deprives defendant of the right to contest the factual allegations of the complaint." (citation omitted)). A plaintiff can establish a prima facie case of ADA disability discrimination by "proving by a [preponderance] of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 30 (1st Cir. 2002) (alterations in original) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). The First Circuit has noted, "[t]his showing is easily made and, once achieved, triggers a presumption of discrimination." Id. (citation omitted). Here, Mr. Buccieri has alleged that he applied for and was qualified for the position at Vital. [Compl. ¶¶ 10, 19]. In light of his own hearing testimony, the Court does not find credible Plaintiff's allegation in the Complaint that Vital simply rejected him despite his qualifications.

However, two facts alleged in the hearing allow Plaintiff to establish his prima facie case. Mr. Buccieri stated that he was ultimately told by a manager at Vital that he was not hired because

10

he was deaf. [Hr'g Tr. 21:9–13]. Further, his story of the two phone calls (when he first called Vital as himself using an interpreter and was told the position was no longer open, then five minutes later when an interpreter pretending to be an applicant called and asked the same question and was told the position was open) establishes that Vital continued to hire for the same position after rejecting Mr. Buccieri. This is similar to the evidence that the First Circuit in Gillen found sufficient to establish a prima facie case. See Gillen, 283 F.3d at 30 ("In the case at hand, the appellant presented evidence that she is disabled; that she applied and was qualified for the EMT position; that she was rejected despite her qualifications; and that [defendant] thereafter continued to hire EMTs. This was enough to satisfy the prima facie case requirement." (citation omitted)). Because Vital has not defended against the claims, it cannot demonstrate a non-discriminatory reason for the failure to hire to rebut the presumption of discrimination that is triggered once Plaintiff establishes his prima facie case. See EEOC v. Aviation Port Servs., LLC, No. 18-10909-FDS, 2020 U.S. Dist. LEXIS 57073, at *9 (D. Mass. Apr. 1, 2020) ("Because defendant [in a default] has not defended against the claims, it has not demonstrated that it could not reasonably accommodate their request to wear long skirts without undue hardship."); Gillen, 283 F.3d at 30 (citation omitted). Regardless, Mr. Buccieri argues that any reason proffered by Vital would be pretextual because Mr. Buccieri alleges he was told by a manager at Vital that he was not hired "because [he] was deaf." [Hr'g Tr. 21:9–17].

The next step in the analysis requires the Court to decide "whether the evidence adduced is sufficient to sustain a finding of discriminatory intent on the part of the defendant[,]" which does not depend on the truth or falsity of the Defendant's explanation, but instead focuses on "whether the plaintiff's evidence suffices to demonstrate the defendant's animus." Gillen, 283 F.3d at 30 (citations omitted). Mr. Buccieri's hearing testimony both hurt his case and saved his claim. His

11

own admission that he had willingly rejected a viable job offer from Vital when the company knew he was deaf fatally undercuts the reasonableness of an inference of intentional discrimination based on his original theory, as alleged in the Complaint. See Ramos-Falcon, 301 F.3d. at 3 (the Court may conduct a hearing on a default judgment motion to "establish the truth of any averment" in the complaint). However, his hearing testimony that he called presenting as a deaf individual and was told the position was not open while non-deaf applicants were told the opposite, and that a manager at Vital blatantly told him he was not hired because he was deaf, must be accepted as true because the Defendant waived any challenge to those facts by failing to respond to the suit. See Vuitton Malletier, 2005 WL 8167941, at *3 (citation omitted).

In a discrimination case, "direct evidence of discriminatory intent is often hard to come by, and circumstantial evidence is often the only means of proving such intent." DeNovellis v. Shalala, 124 F.3d 298, 308 (1st Cir. 1997) (citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In some cases, timing can serve as circumstantial evidence, where proximity in time between the protected activity and alleged adverse action "may be suggestive of discriminatory animus' in conjunction with other evidence." McCue v. Bradstreet, 807 F. 3d 334, 344 (1st Cir. 2015). Here, given the procedural restrictions of a default, the Court accepts Plaintiff's allegations at the hearing as true and will infer, based on the timing of Mr. Buccieri's rejection and the purported statement by the manager at Vital, that he has met his burden in establishing intentional discrimination – but just barely. Mr. Buccieri has not put forth other evidence to substantiate his claim of intentional discrimination beyond those two facts established by his own testimony.

### B.  Damages

#### a.  Emotional Distress Damages

Emotional damages are considered a type of compensatory damages under the ADA. See EEOC 2020 U.S. Dist. LEXIS 57073, at *20-21. A plaintiff seeking compensatory damages under the ADA must first show intentional discrimination by the defendant. McDonough, 452 F.3d at 23 (citing Kolstad, 527 U.S. at 534). A plaintiff seeking emotional distress damages must link the defendant's conduct to their harm and include "substantial evidence of a causal connection between the complainant's emotional distress and the respondent's unlawful act." Neal v. Omni Bos. Corp., No. 1:23-cv-11682-JEK, 2025 U.S. Dist. LEXIS 58638, at *15-16 (D. Mass. Mar. 28, 2025) (quoting DeRoche v. Mass. Comm'n Against Discrimination, 848 N.E.2d 1197, 1202 (Mass. 2006)). Further, emotional distress damages "must be proved by substantial evidence of the emotional suffering that occurred[.]" Id. A plaintiff may be eligible for emotional distress damages "even when the defendant's conduct does not cause 'concrete psychological harm.'" EEOC, 2020 U.S. Dist. LEXIS 57073, at *20–21 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993)). While emotional distress damages may be warranted even where the plaintiff does not provide medical or psychiatric evidence, "the lack of such evidence is relevant to the amount of award." Id. at *21 (quoting Koster v. Trans World Airlines, Inc., 181 F.3d 24, 35 (1st Cir. 1999)).

Additionally, when a plaintiff's claim for emotional distress is based solely on his own testimony without corroborating evidence that would inform the factfinder "as to the existence, nature, duration and seriousness of the condition," the court may deny emotional distress damages if such testimony is insufficient to prove by a preponderance of the evidence that plaintiff experienced emotional distress caused by the defendant. Aadland v. Boat Santa Rita II, Inc., No. 17-CV-11248-DJC, 2023 WL 8720128, at *11–12 (D. Mass. Dec. 18, 2023), aff'd in part, vacated in part on other grounds, remanded, 132 F.4th 33 (1st Cir. 2025) (citing Bullard v. Cent. Vermont Ry., Inc., 565 F.2d 193, 197 (1st Cir. 1977)). Moreover, "a factfinder is not required to accept the

plaintiff's uncorroborated testimony of emotional distress." Id. (citing Acevedo-Luis v. Pagan, 478 F.3d 35, 40 (1st Cir. 2007)). Overall, courts have considered the following factors when determining emotional distress damages:

> [T]he degree of mental pain and anguish (such as feelings of depression, humiliation, or fear); physical manifestations of emotional distress (such as disordered sleeping or eating); the type of medical or other treatment, if any, sought; the effect on family members and family relationships; the economic hardships suffered as a result of the employment practice (such as bankruptcy, depleted retirement savings, or loss of housing); and the attachment that plaintiffs felt to their workplace (such as length of tenure or seniority).

EEOC, 2020 U.S. Dist. LEXIS 57073, at*26-27.

In consideration of the factors listed above, as well as Plaintiff's failure to disentangle Vital's conduct from the defendants in the other cases where he alleges near identical claims for emotional distress, the Court finds that Mr. Buccieri's emotional damages must be limited and nominal in nature. First, as discussed at length, Plaintiff's claims are not strong given inconsistencies in the record, nor are they supported by substantial evidence. The inference of intentional discrimination just barely passes the threshold of being reasonable given that Vital certainly could have decided not to reopen the position for Mr. Buccieri since he rejected its original offer. Second, Mr. Buccieri's emotional distress does not appear to be severe. In conclusory terms, he asserts, "I have suffered and continues to suffer from dignitary harm as well as psychological and emotional distress, including but not limited to anger, anxiety, disappointment, embarrassment, humiliation, self-doubt and loss of self-confidence, and feelings of exclusion and isolation from society." [ECF No. 27 ¶ 13]. Plaintiff offered no other evidence or corroborating testimony from sources other than himself. He does not describe how any of the conclusory sentiments he lists are manifesting in terms of emotional symptoms, except that he was "upset" and "discouraged." [Hr'g Tr. 21:23–25–22:4–6].  Likewise, nowhere in the record does he

14

assert any kind of physical manifestation of his distress, like loss of sleep or appetite. To the Court's knowledge, he never sought medical treatment for his emotional distress. He has not argued that his emotional distress affected his family or other relationships in his life. He cannot articulate an attachment to his workplace because this is a failure to hire case, so he never actually worked at Vital. On the other hand, he has alleged economic consequences such as a "loss of opportunity, including loss of work experience and trainings in the EMS field." [ECF No. 27 ¶ 13].

The Court's greatest hesitation lays with the law's requirement that Plaintiff prove causation for emotional distress damages: that the defendant in the case at hand caused the emotional harm the plaintiff alleges in his complaint. See Neal, 2025 U.S. Dist. LEXIS 58638, at *15-16 (quoting DeRoche, 848 N.E.2d at 1202) (plaintiff seeking emotional distress must allege "substantial evidence of a causal connection between the complainant's emotional distress and the respondent's unlawful act."). Despite being asked directly about it in the hearing, Plaintiff has not distinguished the harm he alleges was caused by *this* Defendant, Vital, versus the other ambulance companies he sued for emotional distress on the same day. [Compare Compl. ¶ 23 with Brewster, ECF No. 1 ¶¶ 19, 38, and Lifeline, ECF No. 1 ¶¶ 17, 49]. Mr. Buccieri's own statements indicate that his emotional distress may be caused by actors other than this Defendant. [See ECF No. 27 ¶ 13 ("I have been denied similar ambulance driving positions in the past solely because of my disability, and Vital's discrimination reaffirms that a large part of society deems me unable to work simply because I am deaf.")].

Because Plaintiff's emotional distress is not severe and supported by only his own testimony, because the inference of intentional discrimination is only marginally plausible, and because the causal connection between the Defendant's conduct and Plaintiff's emotional trauma

15

"is complicated by other factors similarly causing such suffering," the Court finds an award of $1,000 in compensatory damages to be appropriate in this case. See McKinnon v. Kwong Wah Rest., 83 F.3d 498, 506-07 (1st Cir. 1996) (awarding $2,500 in emotional distress compensatory damages where emotional distress was caused, in part, by sources independent from the defendant's conduct). The Court took the opportunity to hold an evidentiary hearing on damages and called on Plaintiff directly to make his best case for emotional distress damages. [See Show Cause Order]. At the hearing, the Court was able to hear and see the Plaintiff and assess his demeanor and credibility. His testimony was rife with inconsistencies and revealed material omissions from the Complaint. Despite the difficulties in ascertaining an amount, the Court carefully considered the factors required by law and determines that a $1,000 is an appropriate sum to compensate the Plaintiff. See McKinnon, 83 F.3d at 506–07 (upholding trial court's emotional distress award where the court "had the opportunity to see and hear the plaintiffs, and no doubt took into account their demeanor as well as other factors, such as their ages, nature of employment, and earnings, in setting the damages amount.").

**b. Punitive Damages**

Punitive damages under the ADA "are limited . . . to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Kolstad, 527 U.S. at 529–30 (quoting 42 U.S.C. § 1981a(b)(1)). "[M]alice and reckless indifference concern, not the employer's awareness that it is discriminating, but the employer's knowledge that it is acting in violation of federal law." McDonough, 452 F.3d at 24. There are recognized situations where intentional discrimination may be present, but punitive damages are not appropriate. "Such situations may occur where the employer believes that it can lawfully discriminate, where the theory of

16

discrimination is novel or poorly recognized, or where the employer believes that its discrimination falls within a statutory exception." Id. (citing Kolstad, 527 U.S. at 536–37). Although allegations in the complaint are taken as true in a default judgment, the Court, "need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages," and the Court "is required to conduct its own inquiry to ascertain the amount of damages with reasonable certainty." Bonnette, 2021 U.S. Dist. LEXIS 257689, at *3 (citations omitted).

Here Plaintiff has barely established intentional discrimination by virtue of procedural constraints on this Court's ability to test the veracity of Plaintiff's claims. Plaintiff's argument in support of punitive damages rested entirely on the false premise in the Complaint that Vital withdrew an employment offer upon Mr. Buccieri's attempt to accept it. [ECF No. 33 at 7 ("An employer that extends a job offer to a qualified applicant, withdraws it immediately upon the applicant's attempt to accept, reposts the same position, and then ignores the applicant's subsequent applications acts in the face of an obvious risk that its conduct violates federal law.")]. As noted, Plaintiff himself testified that Vital never withdrew its offer of employment – Vital failed to reopen the position for Mr. Buccieri after he rejected it for a company with better benefits. Plaintiff has not made any allegations sufficient to support the higher standard of malice or reckless indifference. Accordingly, the Court denies Plaintiff's request for punitive damages.

## C. Injunctive Relief

Plaintiff also seeks injunctive relief, asking the Court to order Vital:

1. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals;

2.  to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective auxiliary aids and services;

3.  to develop, implement, promulgate, and comply with a policy to ensure that Defendant will provide individuals who are deaf or hard of hearing with reasonable accommodation;

4.  to train all its employees, staff, and other agents about the rights of individuals who are deaf or hard of hearing under the ADA, RA, and M.G.L c. 151B.; and

5.  to hire Plaintiff.

[Compl. at 10].

An injunction must be "narrowly tailored to give only the relief to which plaintiffs are entitled." Brown v. Trs. of Bos. Univ., 891 F.2d 337, 361 (1st Cir. 1989) (citing Califano v. Yamasaki, 442 U.S. 682, 702 (1979)). As stated previously, employment discrimination claims brought under Title I of the ADA are subject to the remedies and procedures available in a Title VII action. See 42 U.S.C. § 12117(a) (incorporating the procedures found in 42 U.S.C. § 2000e–5). Where the Court determines that an employer has intentionally engaged in an unlawful employment practice, Title VII § 706 authorizes the Court, "to 'enjoin the respondent from engaging in such unlawful employment practice' and to order 'equitable relief as the court deems appropriate.'" EEOC, 2020 U.S. Dist. LEXIS 57073, at *33 (quoting 42 U.S.C. § 2000e-5(g)(1)). The question of whether to issue injunctive relief "rests in the sound discretion of the district court." Id. (quoting Taylor v. Teletype Corp., 648 F.2d 1129, 1135 (8th Cir. 1981)).

Generally, there are two kinds of injunctive relief in discrimination cases: (1) "obey the law" relief, and (2) case specific relief "to prevent future discrimination of the kind contemplated in the lawsuit." Id. at *36. "Obey the law" relief asks the Court to command the Defendant to

18

"obey the law concerning [discrimination]" and is routinely rejected by courts because such injunctions are "vague, overly broad, and [do] not provide defendant with adequate notice of the specific acts prohibited." Id. at *35–36. Case specific injunctive relief may be ordered to prevent "acts that 'are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past.'" Id. (quoting Brown, 891 F.2d at 361 n.23).

Returning to the principle that an injunction must be "narrowly tailored," Brown, 891 F.2d at 361, some courts will decline to issue injunctive relief that would benefit nonparties other than the prevailing plaintiff. For example, in Brown v. Trustees of Boston University, the First Circuit vacated an injunction against gender-based discrimination regarding all faculty members, where plaintiff only made a showing of discrimination in her specific case. Id. On the other hand, the Circuit did uphold orders reinstating plaintiff and prohibiting gender-based discrimination regarding plaintiff's future promotion, salary, or other benefits. Id. Regarding the decision to vacate the portion of injunctive relief affecting non-parties, the Circuit wrote, "there is no such reason here for an injunction running to the benefit of nonparties. Professor Brown's case established that she alone had been the victim of sex discrimination. The only permissible focus of the injunctive relief, therefore, would be on protecting her from further instances of sex discrimination or retaliation." Id.

Here, the Court must deny Plaintiff's request for injunctive relief because the "obey the law" requests are overly broad and vague, and Plaintiff has not sufficiently developed the record to warrant case specific relief. With respect to Mr. Buccieri's first, third, and fourth requests (requests for Vital to develop a policy to comply with the law or train its staff), these are "obey the law" requests that are "vague, overbroad, and fail to give sufficient notice to defendants consistent

19

with principles of due process," *i.e.*, such requests do not provide the Defendant with notice of the specific acts that are prohibited. EEOC, 2020 U.S. Dist. LEXIS 57073, at \*34. Further, these forms of relief would benefit non-parties and Plaintiff has not demonstrated harm to anyone but him alone; therefore, he fails to establish that relief benefitting anyone but himself is warranted. See Brown, 891 F.2d at 361.

Regarding Mr. Buccieri's second request (for Vital to develop a policy regarding an individual's rights to auxiliary aids), this request must be denied because Plaintiff "has not shown a cognizable danger of future [disability] discrimination of the same type or class as that demonstrated in this suit should this Court fail to issue the suggested injunction." EEOC, 2020 U.S. Dist. LEXIS 57073, at \*36–37. For example, he has failed to show any company-wide policy that influenced the individual office's refusal to hire him. All he has shown is a single act affecting him personally. See id. at \*37 (denying a similar request because plaintiff "has not shown that there was any religious discrimination or failure to provide reasonable religious accommodation at defendant's nine remaining locations, or that there were company-wide policies that influenced the Boston office's refusal to provide reasonable accommodation to the complaining [employees]".)

Regarding the fifth request to make Vital hire Mr. Buccieri, this relief is not supported by the record before the Court. Because this is a default judgment case, the record is undeveloped on key facts like what the job qualifications were, what reasonable accommodations Mr. Buccieri would have needed, or whether the Defendant would be able to raise an affirmative defense to those accommodations. Accordingly, the Court is unable to tailor the injunctive relief to be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[]." Id. at \*34 (quoting Califano, 442 U.S. at 702).

For the reasons stated above, Plaintiff's request for injunctive relief is **DENIED**.

### D. Counts II and III are Time Barred

Plaintiff's claims under Counts II and III are barred by the statute of limitations. Plaintiff brings Count II under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") and Count III under Mass. Gen. Laws ch. 151B ("Chapter 151B"). Section 504 does not indicate its own statute of limitations. This means that the Court must borrow a limitation period from the most analogous state law, "provided that [the limitation period of choice] does not [upset] federal law or policy." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 118 (1st Cir. 2003). The First Circuit has held that in Massachusetts, district courts should apply the three-year limitations period borrowed from the forum state's statute of limitations for Chapter 151B claims. See Rae v. Woburn Pub. Sch., 113 F.4th 86, 99 (1st Cir. 2024). A Chapter 151B claim "must be filed in court within three years of the adverse employment action." Id. (citing Mass. Gen. Laws ch. 151B, § 9). In a failure to hire Chapter 151B case, the "adverse employment action" is the Defendant's denial of Plaintiff's employment application. See Ward v. Town of Belmont, No. 15-10508-LTS, 2015 U.S. Dist. LEXIS 158670, at *2–3 (D. Mass. Nov. 23, 2015) (citing Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)). Mr. Buccieri applied to the position in question several times but was not hired. The latest date of his final application was May 2, 2019. [Compl. ¶ 14]. Therefore, Plaintiff's claims under Chapter 151B or Section 504 must have been filed by May 2, 2022. See Rae, 113 F.4th at 99. Plaintiff filed his complaint on November 14, 2022. [ECF No. 1].

Plaintiff concedes that Counts II and III are barred by the statute of limitations. [ECF No. 33 at 10]. Accordingly, the Court **DISMISSES** Counts II and III.

### E. Attorney's Fees

The ADA permits a "prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. "The term 'prevailing party' is a 'legal term of art.'" Neal, 2025 U.S. Dist. LEXIS 58638, at *37 (quoting Suárez-Torres v. Panaderia y Resposteria España, Inc., 988 F.3d 542, 551 (1st Cir. 2021)). To qualify as a "prevailing party," the party seeking to recover fees must demonstrate (1) a material change of the legal relationship of the parties (2) that is approved or authorized by the Court. Id. (quoting Suárez-Torres, 988 F.3d at 551). "A material change occurs when the plaintiff succeeds on 'any significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing the suit.'" Suárez-Torres, 988 F.3d at 551 (brackets in original) (quoting Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989)). A plaintiff who obtains an "enforceable judgmen[t] on the merits" qualifies as a prevailing party. Neal, 2025 U.S. Dist. LEXIS 58638, at *37 (winner of a default judgment qualifies as a prevailing party).

"'When fashioning a fee award, the district court ordinarily starts by constructing what has come to be known as the lodestar,' which is generally 'the product of the number of hours appropriately worked times a reasonable hourly rate or rates.'" Id. (quoting Hutchinson v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011)). Mr. Buccieri, as the party seeking the award, has a burden to establish support for his request. Id. Such supporting materials "should include counsel's contemporaneous time and billing records, suitably detailed, and information anent the law firm's standard billing rates." Id. (quoting Hutchinson, 636 F.3d at 13). The Court retains discretion, and has a duty, to modify or reduce a request for attorney's fees based on its "overall sense of a suit," which may include "winnow[ing] out excessive hours." Id. (first quoting Pérez-Sosa v. Garland, 22 F.4th 312, 322 (1st Cir. 2022) then quoting Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 296 (1st Cir. 2001)).

22

As the Court has ruled in favor of Mr. Buccieri, he has achieved some of the "benefit" of bringing his suit and has an enforceable judgment on the merits. Suárez-Torres, 988 F.3d at 551; Neal, 2025 U.S. Dist. LEXIS 58638, at \*37. Therefore, he qualifies as a prevailing party in this ADA case. Accordingly, Mr. Buccieri is entitled to attorney's fees.

Within 30 days from this Order, Counsel is directed to file a motion for attorneys fees that includes the supporting materials mentioned above. A determination of the amount of fees shall be made following the Court's review of Plaintiff's request.

## IV.    **CONCLUSION**

For the reasons stated above, Plaintiff's motion for default judgment, ECF No. 16, is **GRANTED IN PART**. The Court **ORDERS** the entry of judgment in favor of Plaintiff and against Defendant as follows: (1) compensatory damages for emotional distress in the amount of $1,000; and, (2) attorney's fees in an amount to be determined in a future proceeding. Plaintiff's counsel is directed, within 30 days of the entry of this Order, to file a motion for attorney's fees that is properly supported by counsel's contemporaneous time and billing records and information on his standard billing rate. See Neal, 2025 U.S. Dist. LEXIS 58638, at \*38.

**SO ORDERED.**

Dated: March 30, 2026

 /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge